[Civ. No. 4961.   Fourth Dist.   Feb. 28, 1956.]

JAMES E. COE et al., Respondents, v. N. A. KESSLER, Appellant.

Mitchell, Silberberg & Knupp and George M. Dell for Appellant.

Siemon & Siemon for Respondents.

MUSSELL, J.—This action was filed in the county of Kern. Defendant Kessler, who was then a resident of the county of Los Angeles, filed a motion for change of the place of trial to the county of his residence. He appeals from the order denying his motion.

In order to determine whether the action is local or transitory it is necessary to ascertain the true character of the action as disclosed by the complaint and the character of

the judgment which might be rendered upon a default thereto. ██ When local and transitory actions are joined in the same complaint, the action is regarded as transitory so far as the right of the defendant to the place of trial is concerned, and any ambiguity must be resolved against the pleader and in favor of the defendant's right. (*Eckstrand* v. *Wilshusen,* 217 Cal. 380, 381-382 [18 P.2d 931]; *Hayutin* v. *Rudnick,* 115 Cal.App.2d 138, 141 [251 P.2d 707].)

The following facts, among others, are alleged in the complaint. On November 29, 1951, plaintiffs James E. Coe and B. Blonder and defendants D. G. Chessman, M. T. Sugarman and N. A. Kessler entered into a written agreement for a limited partnership in the name of Atlas Tungsten Mines. The articles of limited partnership provided in part that the character of the business of said partnership is primarily the leasing, operation and owning of mines and mills for the purpose of obtaining valuable minerals therefrom, particularly tungsten. The principal place of business of the partnership was in the county of Kern and the principal office in the city of Los Angeles. Blonder and Chessman were general partners and the others were limited partners and each partner contributed $1,000. Blonder and Coe were the owners of certain real and personal property of the value of $83,000. This property is described in Exhibit "A," attached to the complaint and consisted of a number of lode mining claims situated in the county of Kern, together with a lease between Kern Mines, Inc., and James E. Coe, and all of the assets of a partnership known as Kavila Mining Company in which Blonder and Coe were two of the principals. The articles of partnership further provide that Blonder and Coe shall cause all assets described in said Exhibit "A" to be transferred to the partnership and that upon completion of such transfers it shall then be deemed that Blonder has loaned the sum of $55,250 to the partnership and that Coe has loaned $17,750 to it. It is further alleged in the complaint that the total contribution of the partners to the partnership amounted to the sum of $154,804.71.

Defendant Kessler took over the management and control of the partnership business and on or about August 1, 1952, the limited partners became dissatisfied with the management of the enterprise and it became evident that it could not be operated at a profit. Kessler then proposed that he take over the partnership and its properties and in consideration

of the transfer to him of the assets of the partnership, he agreed to advance up to $100,000 in an attempt to make possible a profitable operation of the business. In consideration of the promises made by Kessler, the parties entered into an agreement in writing on August 1, 1952. This agreement is denominated "Agreement of Sale" and a copy of it is attached to the complaint and marked Exhibit "C." This agreement between the limited partners and Kessler provides for the sale of certain personal property to Kessler for the sum of $5,000 and for the sale to him of all the assets described in said Exhibit "A," including the mining claims listed therein. The agreement further provides that it is the intention of Kessler upon the successful close of the escrow of sale to expend substantial moneys in an attempt to make possible a successful and profitable operation of the assets conveyed and sold to him. Blonder and Coe were given a right to purchase a percentage interest in said assets under certain terms and on condition that such right to purchase be exercised within a certain time specified in the agreement. Sugarman and Chessman were also given option rights, to be exercised on or before February 1, 1953. The agreement further provided that if the options were exercised, a new limited partnership would be formed giving Kessler the right of management and control thereof.

It is further alleged in the complaint that the transfers of the said assets to Kessler were not intended to be absolute and unconditional and were made to allow Kessler to have absolute freedom and control and that such conveyances were intended to be unconditional and absolute only as to such of the individual partners as should fail or refuse to exercise their said options; that Kessler, in order to induce the partners to enter into said agreement (Exhibit "C"), represented and promised plaintiffs that he would expend up to $100,000 from his personal funds in an effort to operate the mill and mining properties at a profit and would manage the operation with such object and attempt to accomplish the same within approximately 90 days; that Kessler did not expend his personal funds or perform the work promised; that he abandoned the mill without having put it in condition for operation; that he purposely delayed performance of his part of the agreement until after the time provided for the exercise of the said options; that by reason of such delay, Kessler was able to keep the enterprise in a condition of apparent insolvency

and to avoid accumulating profits sufficient to repay himself or to enable the partnership to repay him within the option period; that since the expiration of said option period Kessler has taken out and stockpiled a large quantity of high grade ores which are of an aggregate value greatly in excess of all sums advanced by him; that defendant Kessler is unwilling to extend the time within which his partners may exercise their options and is seeking to claim and assert a forfeiture of the rights of plaintiffs in said mining claims; that if defendant Kessler is permitted to retain said properties free and clear of the claims of the other parties to the partnership, he will have acquired them under a contract providing for a forfeiture of their rights without substantially performing the contract himself; that plaintiffs have no plain, speedy or adequate remedy at law; that damages for the fraud of defendant Kessler as alleged are so uncertain and difficult to estimate plaintiffs cannot be adequately compensated by damages and that a cancelation of said agreement referred to as Exhibit ''C'' is essential to the protection of the rights of the parties to said partnership.

The prayer of the complaint is that the agreement of August 1, 1952, be canceled, rescinded and annulled by reason of the fraud of defendant Kessler; that he be required to account for all of said property, together with all of the income and profits therefrom, and that he be required to reconvey said properties and all of the same to Atlas Tungsten Mines, a limited partnership; that in the event this relief be denied, it be decreed that the transfer of the assets of Atlas Tungsten Mines to defendant Kessler was a security or mortgage; that the defendant Kessler be required to set forth and account for the property conveyed to him, together with the amount of money which he has expended in the development of the same, the amount of ore which he has obtained from the mining properties and sold, if any, with the proceeds therefrom, and for all other receipts and expenditures legitimately made by him as mortgagee and for such other and further relief as may be meet and equitable.

In *Postin* v. *Griggs,* 66 Cal.App.2d 147 [151 P.2d 887], in an action brought by one partner against another to set aside a sale of plaintiff's interest in a limited mining partnership on the ground of fraud and for an accounting, the court said (pp. 149-150):

''Insofar as an accounting is requested, the action is essen-

tially personal, triable in the county of the residence of the defendant. (*Bardwell* v. *Turner,* 219 Cal. 228 [25 P.2d 978].) An action, the gravamen of which is fraud, is triable in the county of the residence of the defendant, and the mere fact that incidentally rights in real property may be involved does not change the rule. (*Brown* v. *Happy Valley Fruit Growers,* 206 Cal. 515 [274 P. 977].) It has likewise been held that an action to cancel a promissory note on the ground of fraud is triable in the county of the residence of defendant (*Howe* v. *Tucker,* 219 Cal. 193 [25 P.2d 832]), as is an action for cancellation of a contract for the purchase and sale of realty and for a money judgment based upon alleged fraud. (*Terry* v. *Rivergarden Farms Co.,* 29 Cal.App. 59 [154 P. 476].) In *Nason* v. *Feldhusen,* 34 Cal.App. 789 [168 P. 1162], it was held that an action for the rescission of a contract, for an accounting and an injunction based upon fraud, is a personal action which the defendants are entitled to have tried in the county of their residence. In *Reid* v. *Kerr,* 64 Cal.App. 117 [220 P. 688], it was held that an action to cancel a deed was transitory and not local. (See also *Averill* v. *Lincoln,* 52 Cal.App.2d 398 [126 P.2d 398].) ''

In *Neet* v. *Holmes,* 19 Cal.2d 605, 611 [122 P.2d 557], the court said:

''The principal relief sought by the plaintiffs is an accounting of operations in the leased property and in the additional twenty mines located by the defendants, and a judgment based on the fruits thereof including title to the additional mines, of which the plaintiffs have been deprived by the alleged fraud of the defendants. Such an action is a proceeding in equity and is essentially a personal action.'' (Citing cases.)

Section 392 of the Code of Civil Procedure, subdivision (a) provides that the proper place of trial of an action for the recovery of real property, or of an estate or interest therein, or for the determination in any form, of such right or interest, and for injuries to real property is the county in which the real property or some part thereof is situated. And section 395 of said code provides that in all other cases the action must be tried in the county in which the defendants or some of them reside. In discussing these sections, the court said in *Turlock Theatre Co.* v. *Laws,* 12 Cal.2d 573, 576, 577 [86 P.2d 345, 120 A.L.R. 786]:

''The rule of the cited cases is that section 392 is effective

only when the real property or the title thereto is the exclusive subject matter of the action. When a cause of action for relief *in personam* also is joined, the defendant is entitled to have the cause transferred to the county of his residence. . . . The plaintiff cannot, by uniting in his complaint matters which form the subject of a personal action with matters which form the subject of a local action, compel the defendant to have both those matters tried in a county other than that in which he resides. It is only when the real estate alone is the subject matter of the action that the provisions of section 392 can be invoked against a defendant who resides in a county different from that in which the land is situated. If, in his complaint, the plaintiff join with such a cause of action another which is not embraced in its provisions, or if he also seeks a remedy against the defendant upon matters which are not embraced within the provisions of this section, his action becomes one of those 'other cases' provided for in section 395, which the defendant is entitled to have tried in the county of his residence.''

In *Hays* v. *Cowles,* 60 Cal.App.2d 514, 518 [141 P.2d 26], the court held that it is well settled that an action for an accounting is a proceeding in equity and is essentially a personal action; that the defendant has the right under section 395 of the Code of Civil Procedure to have such an action tried in the county of his residence; and that a plaintiff cannot deprive him of such right by uniting in his complaint a demand that as a sequence of such litigation the defendant be required also to convey certain real property situate in the county other than the defendant's residence.

It appears to us that the action herein is based on fraud; that the principal relief sought is a cancelation and rescission of the agreement entered into by the partners with defendant Kessler on August 1, 1952, and an accounting for all property, both real and personal, transferred to him by the partnership, together with the income and profits therefrom. Under the rules stated in the foregoing decisions and under the circumstances shown by the record we conclude that the proper place of trial of the instant action is the county of the defendant Kessler's residence.

Respondents argue that the principal and main purpose of this action is for the recovery of real property or an estate or interest therein; that whatever right there may be to require the defendant to account for the mines and/or the

proceeds thereof, requires the determination of some right or interest in real property; that the right to an accounting for the properties or proceeds would depend upon proof of title and that such relief is merely incidental to the main purpose of the action. In support of these contentions respondents cite *Rice* v. *Schubert*, 101 Cal.App.2d 638 [226 P.2d 50], *Eckstrand* v. *Wilshusen*, 217 Cal. 380 [18 P.2d 931], *Grocers' etc. Union* v. *Kern County Land Co.*, 150 Cal. 466 [89 P. 120], and *State* v. *Royal Consol. Min. Co.*, 187 Cal. 343 [202 P. 133].

*Rice* v. *Schubert* was an action to set aside a conveyance of real property as being in fraud of creditors. There the only relief which could be granted in the event of the default of the defendant would have been a judgment setting aside the conveyance under attack. In the instant case an accounting was involved as well as the invalidity of the transfer of personal property, the invalidity of partnership termination and status of respondents in the mining partnership.

The Grocers' Union case, as the court therein stated, was simply an action for the specific performance of a contract for the sale of land under an allegation that the purchase price had been paid and that the right to account, if sufficiently pleaded, was but an incident in the transaction.

In the Eckstrand case it also appeared that the only relief which could have been granted if the defendant had defaulted was a cancelation of the deed on the ground of fraud.

*State* v. *Royal Consolidated Min. Co.* was discussed in *Turlock Theatre Co.* v. *Laws*, 12 Cal.2d 573, *supra,* and the court there said (p. 578):

"In the case of *State* v. *Royal Consolidated Min. Co., supra,* it was held that the action, in so far as it related to rents, issues and profits, was essentially one to quiet title, for the reason that the right thereto depended upon the issue of title, and an adjudication of the right to rents was necessarily determinative of the right to the land itself. The question there did not arise out of proceedings for a change of venue, but was concerned with the question whether the court in Sacramento County had power pursuant to section 3773 of the Political Code to entertain jurisdiction of an action involving title and possession of real property situated in another county. The correctness of the holding that the relief there sought in the nature of rents, issues and profits was merely incidental to the primary object of the action, that is, to recover the title and possession of the mining properties, need not be questioned."

These cases cited by the respondents are not controlling where as here the action is based on fraud and the principal relief sought is an accounting between the parties, the adjudication of their rights as partners, and a cancelation of the agreement of August 1, 1952.

The order denying the motion for change of the place of trial is reversed.

Barnard, P. J., and Griffin, J., concurred.